IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH RESCH, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION - LAW |
| Plaintiffs, | : : | NO. 2:11-cv-06893 |
| v. | : : | |
| KRAPF'S COACHES, INC., | : : | JURY TRIAL DEMANDED |
| Defendant. | : : | |

**REPLY BRIEF OF DEFENDANT, KRAPF'S COACHES, INC.,
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Krapf's Coaches, Inc. ("KCI"), by and through its counsel, Fox Rothschild LLP, respectfully submits this reply brief in support of its Motion for Summary Judgment (the "Motion").

**I.      INTRODUCTION**

The Plaintiffs have failed to show a factual dispute on the critical question before the Court, which is whether the Motor Carrier Act Exemption (the "MCA Exemption"), 29 U.C. §213(b)(1), applies to Plaintiffs' Fair Labor Standards Act ("FLSA") claims. Moreover, as discussed below, Plaintiffs rely on many cases that are inapposite and simply do not support their position.

For example, Plaintiffs do not dispute that the Department of Transportation (the "DOT") has exerted jurisdiction over the drivers in KCI's Transit division - including an Opt-In Plaintiff - on numerous occasions through DOT audits.[1] Additionally, several Opt-In Plaintiffs do not dispute that they have engaged in interstate commerce pursuant to the MCA Exemption by transporting KCI property over state lines as part of their employment. Nevertheless, Plaintiffs attempt to

---

[1] Specifically, Plaintiffs admit, among other things, that: (1) KCI's Transit and Charter divisions operate under DOT registration number 774388; (2) KCI was audited by the DOT in August 2012; and (3) KCI regularly advertises its ability to transport passengers from a place in one state to a place in another state. See KCI's Concise Statement of Material Facts, ¶¶ 6, 87, 90, and Plaintiffs' Responses thereto.

circumvent the plain language of the MCA Exemption by citing selected members of the Opt-In group, representing slightly more than one quarter (1/4) of the KCI Transit drivers receiving notice, and arguing that their duties "do not involve transportation on the public highways of passengers in interstate commerce." See Plaintiff's Brief in Opposition ("Plt.'s Br."), p. 9. Plaintiffs' argument, however, is belied by the record, including the deposition testimony of several Opt-In Plaintiffs regarding out-of-state trips and the daily possibility of driving an interstate route.[2] As discussed below, this argument is legally unsupported, and is based on a strained application of the facts.

## II.  LEGAL ARGUMENT

### A.  Plaintiffs Disregard Congress' Intent Behind The MCA Exemption.

The MCA Exemption is legally and conceptually different than the FLSA exemptions at issue in the cases cited in Plaintiffs' brief, which primarily focus on the more common "white collar" FLSA exemptions. See Davis v. Mountaire Farms, Inc., 453 F.3d 544, 556, 558-59 (3d Cir. 2006) (regarding whether crew leaders at chicken farms fell within the FLSA's executive exemption); Pignataro v. Port Auth. Of New York and New Jersey, 593 F.3d 265, 268 (3d Cir. 2010) (holding helicopter pilots did not qualify for the FLSA's learned profession exemption); Vanstory-Frazier, 827 F. Supp. 2d 461, 468 (E.D. Pa. 2011) (regarding whether front-desk supervisor fell within the FLSA's administrative exemption); Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (regarding the FLSA's fire services exemption); A.H. Phillips v. Walling, 324 U.S. 490, 492 (1945) (regarding the FLSA's retail exemption). These cases involve

---

[2]Additionally, Plaintiffs admit that: (1) KCI SEPTA 306 Route transported passengers from Pennsylvania to Delaware via U.S. Route 202 until November 2010; (2) Opt-In Plaintiffs Barry Sealy and Anita King trained on the SEPTA 306 Route; (3) Opt-In Plaintiffs drove the KCI Arkema Service, which transports Arkema, Inc. employees from the PATCO station in Cherry Hill, NJ to King of Prussia, PA; (4) Opt-In Plaintiffs drove the Wyndham Route, which transports hotel guests and people whose flights were cancelled or delayed from the Wyndham Hotel in Essington, PA to the Philadelphia International Airport; (5) once an individual in the Transit division has been trained on a route, that driver might be called upon to drive that route at any time, including the Arkema-Cherry Hill Route, the Capital One Route, and the Ready Pac Route; and (6) once an individual in the Transit division has been trained on a route, that driver might be called upon to drive that route at any time. See KCI's Concise Statement of Material Facts, ¶¶ 19, 20, 21, 22, 34, 38, 42, and Plaintiffs' Responses thereto.

2

exemptions that are within the "silo" of the FLSA and are wholly subject to the authority of the Department of Labor (the "DOL").

By contrast, the MCA Exemption is defined by reference to the jurisdiction of the DOT, and is, in essence, a form of statutory preemption of the application of the FLSA to employees whose duties affect the safety of interstate commerce. In the seminal case of <u>Levinson v. Spector Motor Service</u>, 330 U.S. 649, 661 (1947), the Supreme Court held that Congress purposefully prohibited the overlapping of the Department of Labor's (the "DOL") jurisdiction with that of the DOT's over motor carriers and motor carrier employees. See <u>id.</u> The Court found that, while Congress could have enforced rigid maximum hours of service for safety purposes, and at the same time, required compliance with the increased rates of pay for overtime work, it did not do so, and instead sought to give the DOT's safety initiatives precedence. See <u>id.</u> Specifically, the Court found that the FLSA's overtime pay provision contradicted the DOT's safety objectives, because such overtime pay encouraged employees to disregard their safety, and the safety of those on the road, in an effort to increase their pay:

> While a requirement of pay that is higher for overtime service than for regular service tends to deter employers from permitting such service, it tends also to encourage employees to seek it. The requirement of such increased pay is a remedial measure adapted to the needs of an economic and social program rather than a police regulation adapted to the rigid enforcement required in a safety program.

<u>Id.</u> at 657.

Plaintiffs' reliance on cases interpreting other FLSA exemptions, wholly governed and regulated by the DOL, is, therefore, misleading, and their arguments are not applicable.

### B.      Plaintiffs' Have Failed To Prove That They Qualify For The *De Minimis* Exception To The MCA Exemption.

Plaintiffs argue that they do not fall within the MCA Exemption because some Opt-In Plaintiffs' interstate travel was so "trivial, casual, and insignificant as to be *de minimis*." <u>Id.</u> In

3

support of this argument, Plaintiffs claim that only the interstate travel of the Opt-In Plaintiffs is at issue, and that the interstate travel performed by the Non-Opt-In Plaintiffs is irrelevant. Plaintiffs argument fails as a matter of law because: (1) courts have held that the *de minimis* exception should never apply to drivers; and (2) the activities of all of the members of the class are relevant and are binding on Plaintiffs as Plaintiffs admit that they could have been assigned to any route driven by any other Transit driver.

### 1.   The *De Minimis* Exception Does Not Apply To Transit Drivers.

Plaintiffs do not dispute that they are "drivers" whose activities directly affect the "safety of operations of motor vehicles." See Plt.'s Br., p. 9. Nevertheless, Plaintiffs mistakenly argue they fall under the "*de minimis*" exception to the MCA Exemption. Id. Plaintiffs are wrong as a matter of law.

When determining whether an employee's job responsibilities have a substantial impact on interstate commerce highway safety, the law clearly dictates that "it is the *nature* of the employee's regular job duties that is most important, not necessarily the *percentage* of the employee's involvement in duties affecting highway safety in interstate commerce." Badgett v. Rent-Way, Inc., 350 F. Supp. 2d 642, 654 (W.D. Pa. 2004).[3]

Consistent with this principle, the Supreme Court held in Morris v. McComb, 332 U.S. 422 (1947) that drivers are covered by the MCA Exemption even if they engage in, or are subject to, only a small percentage of interstate driving. Id. (holding where interstate hauling of freight, which

---

[3] Citing, 29 C.F.R. § 782.2 (2004); Rules and Regulations of the Department of Transportation, Federal Highway Administration, "Application of the Federal Motor Carrier Safety Regulation," 46 FR 37902-02, 1981 WL 115508 at *37902 (July 23, 1981) ("[E]ven a minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisdiction of the [Federal Highway Administration]."); Levinson, 330 U.S. at 674-75; Yellow Transit Freight Lines, Inc. v. Balven, 320 F.2d 495, 498 (8th Cir.1963) ("The factual question to be decided is not whether a substantial part of [the employee's] duties affected the safety of the operations but, rather, whether any of [the employee's] duties had a substantial effect on motor vehicle safety."); Sinclair v. Beacon Gasoline Co., 447 F. Supp. 5, 9 (W.D. La. 1976) ("the character of the [employee's] activities rather than the proportion of time of activities determines the [Secretary of Transportation's] power").

4

comprised approximately 4 percent of employer's total business, was indiscriminately assigned to employer's drivers, entire class of employee drivers were covered by exemption). Several courts have recognized that, due to the very nature of their employment activities, "drivers should seldom, if ever, fall with[in] the *de minimis* exception." See Badgett v. Rent-Way, Inc., 350 F. Supp. 2d.at 656 (citing Friedrich v. U.S. Computer Serv., 974 F.2d 409, 416 (3d Cir. 1992); Crooker v. Sexton Motors, Inc., 469 F.2d 206, 210 (1st Cir. 1972) (holding *de minimis* rule did not apply to drivers because their activities are not trivial); Sinclair v. Beacon Gasoline Co., 447 F. Supp. 5, 9 (W.D. La. 1976) (holding "the *de minimis* rule should seldom, if ever, be applied to one who drives a motor vehicle carrying property of a private carrier in interstate commerce.").

Plaintiffs readily admit to that they are "drivers" and that their activities directly affect the "safety of operations of motor vehicles." See Plts.' Brief, p. 11. As such, the law, contrary to Plaintiffs' assertions, dictates that their actions, by their very nature, are not trivial, and that they cannot escape the application of the MCA Exemption. See, e.g., Badgett, 350 F. Supp. at 656.

### 2. Plaintiffs Have No Support For Their Argument That The Activities Of The Non-Plaintiff Transit Drivers Are Irrelevant To The MCA Exemption Analysis.

The cases cited by Plaintiffs in support of their argument that consideration of the activities of Non-Opt-In Plaintiffs is immaterial either bolster KCI's position and/or are completely irrelevant. For example, Plaintiffs cite a single sentence in Dauphin v. Chestnut Ridge Transportation, Inc., 544 F. Supp. 2d 266, 274 (S.D. N.Y. 2008), for the proposition that employers must "generally present evidence as to the character of the activities of each plaintiff," without noting that, in the next paragraph, the court states:

> Where, however, interstate travel constitutes a "natural, integral and ... inseparable part" of the employees' duties, such that any employee is likely to be called on to perform interstate travel, the employees are all subject to the motor carrier exemption while they fill that position regardless of the actual number of hours they individually devote to interstate travel.

5

Id.

Ibea v. Rite Aid Corp, No. 11 Civ. 5260, 2011 U.S. Dist. LEXIS 144652, *4 (S.D. N.Y. Dec. 14, 2011), also cited by Plaintiffs for the proposition that experiences of the Non-Opt-Ins are irrelevant, is completely inapposite, as the issue in that case was the wholly unrelated matter of class action certification – not the MCA Exemption.  Id.  In Ibea, the court concluded that when determining the viability of a class, the relevant question was whether the opt-in-plaintiffs were "similarly situated," and did not depend on the activities of the non-opt-in plaintiffs.  Id.  This analysis has no bearing on the analysis of the MCA Exemption in the context of the pending Motion for Summary Judgment.[4]

Contrary to Plaintiffs' assertions, the law dictates that if an employer can establish that any driver in a particular group could be called upon at any time to drive an interstate route, the DOT's power to regulate extends to govern the maximum hours and qualifications of all drivers in that group.  See, e.g., Morris, 332 U.S. at 432-33; Badgett, 350 F. Supp. 2d at 657 (holding transit drivers fell under MCA exemption "regardless of the number of interstate/intrastate trips they actually made because they could have been called upon in the regular course of their employment to make trips affecting interstate commerce.").  For this reason, the activities of the Transit drivers who did not opt-in to the current case are directly relevant, especially because Plaintiffs admit that once an individual in the Transit division has been trained on a route, that driver might be called upon to drive that route at any time, including KCI's interstate routes, and that Transit drivers are able to "swap" routes with other drivers.  See KCI's Concise Statement of Material Facts, ¶ 42, 43, 45, 46, and Plaintiffs' Response thereto.

---

[4] Furthermore, the District Court for the Southern District of Florida's holding in Arranda v. Southwest Transport, Inc., is not supportive of Plaintiffs' argument, as the court found it determinative in that case that the plaintiffs never left the state, and never agreed to leave the state.  See id., 2012 U.S. Dist. LEXIS, 34763, *19.  Here, however, Plaintiffs have testified that they have left the state, and have agreed to leave the state.  See KCI's Concise Statement of Material Facts, ¶ 42, 43, 45, 46, and Plaintiffs' Response thereto.  As such, Arranda is unsupportive of Plaintiffs' claims.

Moreover, when one considers the scope and purpose of the MCA Exemption, as discussed in Section I.A. *infra*., it is apparent that the driving and other activities of the Non-Opt-Ins, and the Opt-Ins, i.e. the entire putative class, should be considered in determining whether KCI is entitled to properly claim the MCA Exemption. The MCA Exemption focuses on the activities and business of the employer, as reflected, in part, by the activities of its employees, but also vis-à-vis the jurisdiction of the DOT in light of the overall business operations of the employer. To argue that KCI can only rely upon the activities of a self-selected group of opt-in plaintiffs to define their business operations and purpose is counter to the purpose of the MCA and is unsupported by the law.[5]

### III.  CONCLUSION

For the foregoing reasons, and the reasons set forth in KCI's Motion for Summary Judgment and Brief in Support thereto, KCI respectfully requests that the Court find in its favor and dismiss Plaintiffs' Complaint.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
/s/ Randall C. Schauer
By: Randall C. Schauer, Esquire, ID #34273
Jennifer J. Hanlin, Esquire, ID #201542
747 Constitution Drive, Suite 100
Exton, PA  19341
610-458-7500

Date:  May 30, 2013

rschauer@foxrothschild.com
jhanlin@foxrothschild.com
***Attorneys for Defendant, Krapf's Coaches, Inc.***

---

[5] To claim otherwise would be to create subclasses where none exist – as Plaintiffs suggest in one final effort to save their claims. See Plt.'s Br., p. 17. The problem with that approach is not only that it is counter to law, but also the manner in which KCI operates generally and vis-à-vis it Transit drivers. For example, KCI could quickly and easily thwart any purported "subclass" by choosing to rotate all drivers so that each regularly crosses state boundaries in the performance of his or her duties.